UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STACY JAMES STORM,<br><br>      Plaintiff,<br><br>vs.<br><br>ANGIE TWITCHELL and<br>LIEUTENANT HASS,[1]<br><br>      Defendants. | Case No. 1:12-cv-00179-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff is proceeding pro se in this prisoner civil rights action. He brings Eighth

Amendment claims of deliberate indifference against Defendant Lieutenant Robert Hass

and Nurse Angie Twitchell, and claims of unconstitutional conditions of confinement

against Defendant Hass. (Initial Review Order, Dkt. 10.)  Plaintiff alleges that, while he

was a pretrial detainee in the Jerome County Detention Facility (JCDF), Defendants failed

to follow doctor's orders to provide him with medication or otherwise treat his severe

alcohol withdrawal seizures. Plaintiff also alleges he was kept in unsanitary conditions,

without running water, and that Defendant Hass failed to properly restrain Plaintiff when

---

[1] Plaintiff identified these individuals as "Jail Nurse Angie" and "Lt. Hauss" in his
Complaint. (Dkt. 3.)

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff involuntarily engaged in behavior harmful to himself during his alcohol withdrawal.

Currently pending before the Court are Defendant Twitchell's Motion for Summary Judgment (Dkt. 55) and Motion to Seal (Dkt. 58). Also pending are Defendant Hass's Rule 12 Motion to Dismiss for Failure to Exhaust that will be treated as a Rule 56 motion for summary judgment (Dkt. 30)[2] and Motion to Seal (Dkt. 37). In addition, Plaintiff has filed a Motion to Modify Prisoner Complaint Form (Dkt. 48) and Motion to Appoint Counsel (Dkts. 56, 68).

All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to enter final orders in this case. (Dkt. 26.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having carefully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral arguments. Therefore, the Court will decide the matters before it on the motions, briefs and record. D. Idaho L. Civ. R. 7.1(d).

## SUMMARY JUDGMENT MOTIONS

### 1. Summary Judgment Standard of Law

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is

---

[2] Defendant Twitchell joined in this motion. (Dkt. 41.) On April 23, 2014, the Court gave notice that this motion would be treated as a motion for summary judgment. (Dkt. 63.)

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be a *genuine* dispute as to a *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal

quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[3] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the

---

[3] When determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**2.      Defendant Twitchell's Motion for Summary Judgment**

Defendant Twitchell moves for summary judgment because Plaintiff's claims "are wholly unsupported by the record or any expert evidence and therefore fail to create a triable issue of fact." (Dkt. 55-1, p. 4.)

**A.      *Standard of Law for Deliberate Indifference***

At the time of the incident in question, Plaintiff was a pretrial detainee. The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, *Bell v. Wollfish*, 441 U.S. 520, 537 n. 16 (1979), but the same standard applies in both circumstances. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010)

**MEMORANDUM DECISION AND ORDER - 5**

(*citing Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010)

(rejecting the contention that mentally ill pretrial detainees are entitled to greater

protection under the Fourteenth Amendment)). "We have long analyzed claims that

correction facility officials violated pretrial detainees' constitutional rights by failing to

address their medical needs (including suicide prevention) under a 'deliberate

indifference' standard." *Clouthier,* 591 F.3d at 1241.

To state an Eighth Amendment claim regarding prison medical care, a plaintiff

must alleges facts showing that prison officials' "acts or omissions [were] sufficiently

harmful to evidence deliberate indifference to serious medical needs." *Hudson v.

McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).

The Supreme Court has opined that "[b]ecause society does not expect that prisoners will

have unqualified access to health care, deliberate indifference to medical needs amounts to

an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

[F]ailure to treat a prisoner's condition [that] could result in further
significant injury or the unnecessary and wanton infliction of pain; . . . [t]he
existence of an injury that a reasonable doctor or patient would find
important and worthy of comment or treatment; the presence of a medical
condition that significantly affects an individual's daily activities; or the
existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*,

*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious

medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to appropriate medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.") (internal quotation marks omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,'

and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health."
*Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting
*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of
action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th
Cir. 1980) (per curiam). A mere delay in treatment does not constitute a violation of the
Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If
medical personnel have been "consistently responsive to [the inmate's] medical needs,"
and there has been no showing that the medical personnel had "subjective knowledge and
conscious disregard of a substantial risk of serious injury," there is no Eighth Amendment
violation. *Toguchi*, 391 F.3d at 1061.

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes
v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand
specific care. She is not entitled to the best care possible. She is entitled to reasonable
measures to meet a substantial risk of serious harm to her."). And there is no constitutional
right to an outside medical provider of one's own choice. *Roberts v. Spalding*, 783 F.2d
867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to
outside medical care additional and supplemental to the medical care provided by the
prison staff within the institution.").

### B. *Material Facts*

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Plaintiff arrived at Jerome County Detention Facility ("JCDF") on January 4, 2011. When he arrived, he was going through alcohol withdrawal and was treated with a standard alcohol withdrawal protocol and observed regularly. Plaintiff was transferred to St. Benedict's Family Medical Center ("St. Benedict's") on the evening of January 4, 2011, because his symptoms were worsening. He remained at St. Benedict's through January 9, 2011.

Plaintiff was released from St. Benedict's and returned to JCDF on January 9, 2011. Dr. Keller of Badger Medical was Plaintiff's medical care provider at JCDF. Dr. Keller consulted with Plaintiff's treating physician at St. Benedict's, Dr. Kern, on three occasions. (Keller Aff. ¶¶ 7-9 (Dkt. 55-3.))

Plaintiff's discharge summary from St. Benedict's states that treatment was to be directed by Dr. Keller. (Twitchell Aff., Ex. A (Dkt. 55-4.)) In the discharge notes, Dr. Kern noted that he believed Plaintiff was exaggerating his symptoms as his behavior

differed between when he knew he was being observed and the times when he was not aware he was being observed. (*Id*.; Keller Aff. ¶ 9.)

On January 10, 2011, after Plaintiff's discharge from St. Benedict's, Dr. Keller ordered that Plaintiff receive 10 mg of Valium (diazepam) *once* a day for 10 days, then 5 mg for another 10 days. He also ordered .2 mg of clonidine twice a day for 14 days, then .1 mg twice a day for another two days. (Twitchell Aff. ¶ 4, Ex. B; Keller Aff., ¶ 11.)

Angie Twitchell works at JCDF as a nurse under Dr. Keller's supervision. On January 10, 2011, Nurse Twitchell administered Plaintiff's medications according to Dr. Keller's dosage orders. Plaintiff insisted he was to receive more clonidine and became agitated and began yelling. Nurse Twitchell contacted Dr. Keller regarding Plaintiff's behavior. Dr. Keller informed her this was normal behavior during withdrawal, and instructed her to continue to monitor Plaintiff's vital signs. (Twitchell Aff. ¶¶ 2, 5-6.) On January 13, 2011, Plaintiff was taken to St. Benedict's for a suspected seizure. He was released on January 14, 2011. (*Id*. at ¶¶ 7-8.) While at St. Benedict's, Plaintiff was prescribed 10 mg of Valium three times a day by an E.R. physician.

Upon Plaintiff's return to JCDF, Nurse Twitchell continued to administer Plaintiff's medications according to Dr. Keller's dosage orders. Dr. Keller concluded that his recommended dose of 10 mg of Valium once a day was appropriate during Plaintiff's second week of withdrawal. (Keller Aff. ¶ 15; Twitchell Aff. ¶ 8.)

On January 15, 2011, jail staff observed Plaintiff on his cell floor. He appeared to be having a seizure, but knew his name and where he was located physically. After being

moved to his bunk, Plaintiff sat up and stated: "This is what happens when I don't get enough valium for my anxiety." The deputies in charge suspected he was faking the seizure but continued to observe him throughout the night. (Twitchell Aff. ¶ 9, Ex. E; Keller Aff. ¶ 18.) Dr. Keller concluded that Plaintiff did not have an actual seizure. (Keller Aff. ¶ 19.)

Plaintiff was seen at the medical clinic on January 20, 2011, in response to his request for medical care related to his anxiety. He reported feeling better. (Twitchell Aff., Ex. D; Keller Aff. ¶ 21.) However, his vital signs were elevated. Dr. Keller believed this was related to alcohol withdrawal and ordered that Plaintiff's vital signs be monitored for the next two days. By January 22, 2011, Plaintiff's vital signs were at safe levels. (Twitchell Aff., Ex. D; Keller Aff. ¶ 21.) Between January 10 and January 30, 2011, Plaintiff received the medications consistent with Dr. Keller's orders. His treatment plan was completed on January 30, 2011. (Twitchell Aff. ¶ 11-12; Ex. C.)

C.    *Analysis*

The crux of Plaintiff's claim against Nurse Twitchell is that she denied him the "amount of medication ordered by a doctor to keep [him] from having seizures from alcohol withdrawals." (Compl., p. 3 (spelling corrected.)) These allegations ostensibly stem from the fact that the E.R. physician prescribed Plaintiff 10 mg of Valium three times a day during his stay at St. Benedict's on January 13, 2011. When he returned to JCDF, Nurse Twitchell continued to administer Valium only once a day, as directed by Dr. Keller, who determined that once a day was appropriate for Plaintiff's stage of withdrawal.

(*See* Keller Aff. ¶ 15; Twitchell Aff. ¶ 8.)  The record shows that Plaintiff received all his medications as directed by Dr. Keller.  (*See* Twitchell Aff., Ex. C.) When Nurse Twitchell became concerned about Plaintiff's behavior, she contacted Dr. Keller.  She also monitored his vital signs as directed by Dr. Keller.

Defendant Twitchell has met her initial burden of showing that she was not deliberately indifferent to Plaintiff's medical needs. Nothing in the record suggests that she had a subjective intent to ignore Plaintiff's medical needs or cause him pain or harm. Rather, the record reflects that she carefully followed Dr. Keller's instructions and consulted with Dr. Keller during the course of treatment of Plaintiff to ensure that it continued to be  appropriate. Neither does anything in the record reflect any objective deliberate indifference on the part of Nurse Twitchell, as she followed Dr. Keller's instructions and informed him of Plaintiff's condition during the course of treatment. While the facts do show that an E.R. physician prescribed a higher dosage of Valium than what Nurse Twitchell administered in accordance with Dr. Keller's orders, a prison doctor's treatment recommendation is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

The burden then shifts to Plaintiff to establish that a genuine dispute as to a material fact precludes summary judgment.  He has failed to do.  Plaintiff did not file any

substantive response to Defendant Twitchell's motion.[4] In the absence of a response, the record does not reflect any facts that would raise a question as to the subjective or objective prongs of the deliberate indifference test. If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). Accordingly, the Court finds Defendant's facts to be undisputed and supported by the record. These facts do not show that Twitchell's treatment of Plaintiff was "medically unacceptable under the circumstances" or "was chosen in conscious disregard of an excessive risk" to Plaintiff's health." *Toguchi*, 391 F.3d at 1058. The fact that Plaintiff disagreed with the amount of medication he was prescribed by Dr. Keller, and administered by Nurse Twitchell, is not sufficient to establish deliberate indifference. *See Sanchez*, 891 F.2d at 242. Therefore, Nurse Twitchell is entitled to summary judgment.

---

[4] Defendant Twitchell's Motion for Summary Judgment was filed on February 14, 2014. (Dkt. 55.) On February 21, 2014, notice of the "Summary Judgment Rule Requirement" was sent to Plaintiff. (Dkt. 57.) On March 13, 2014, Plaintiff filed a "response" that addressed only the failure to exhaust administrative remedies issue. (*See* Dkt. 60, 60-1.) Following the Ninth Circuit decision in *Albino v. Baca*, the Court issued a notice that Defendant Hass's earlier filed Motion to Dismiss would be treated as a motion for summary judgment under Rule 56 and gave Plaintiff 21 days to file a supplemental brief. (Dkt. 63.) Plaintiff filed a motion for extension of time (Dkt. 65) to file this supplemental response which the Court granted, giving Plaintiff until June 27, 2014 to file a response. (Dkt. 67.) Plaintiff did not file any responsive document.

**3.    Defendant Hass's Motion for Summary Judgment re: Exhaustion of Administrative Remedies**

> **A.    *Standard of Law for Exhaustion of Administrative Remedies***

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[5] prisoners are required to exhaust all available administrative remedies within the prison system before they can include their claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the very

---

[5] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

beginning of litigation, and "disputed factual questions relevant to exhaustion[,] should be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

Failure to exhaust is an affirmative defense that may be asserted in a Rule 12(b)(6) motion to dismiss for failure to state a claim only if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. When either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion," the Court may enter summary judgment for either the moving or the nonmoving party (on the court's own motion). *Id*. at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal

quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other

similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

### B. *Material Facts*

The facts material to the administrative exhaustion issue are included within the sections below. The steps required to complete the Jerome County grievance process are undisputed. Where the facts concerning whether the exhaustion process was properly completed or whether an excuse for failure to complete the process are in dispute, the Court has so noted.

Plaintiff was housed at the JCDF in January 2011 during the time period when the incidents at issue occurred. The Inmate Handbook provided to the Court is identified as a version updated in August 2011. The incidents at issue took place in January 2011. Defendants have not provided the version of the Inmate Handbook that was available to Plaintiff in January 2011, nor have they addressed how the August 2011 version differs from the one in effect in January 2011. Plaintiff, however, has not pointed to any portion of the grievance policy, if any, that was different from the version in effect when he was housed at the JCDF.

The JCDF Inmate Handbook explains the grievance policy as follows:

> INMATES REQUEST FORMS AND GRIEVANCES
> When an inmate of this facility believes that he/she has been treated unfairly by detention staff or another inmate, the inmate has the right to file a grievance against that person. Inmate request kites are for anything other than a grievance or attorney request. If a deputy or staff member cannot answer the request or grievance form, it will be passed on to the Detention Administrator. All grievances and request forms will be considered seriously and answered in a professional and timely manner. Inmates conduct is subject to a disciplinary hearing before any sanctions will be imposed, unless the inmate's behavior creates a safety and security concern.

(McFall Aff. ¶ 3 (Dkt. 31); Kane Aff. (Dkt. 72.)) The Handbook is provided to each inmate at JCDF. (McFall Aff. ¶ 3.) An inmate must ask a Detention Deputy for a grievance form. When it is completed, it is forwarded to a supervisor (Sergeant) and either addressed at that level or forwarded up the chain of authority to the Jail Commander or Sheriff. A written response is then returned to the inmate with a copy retained in his or her file. (*Id*.)

Plaintiff states that, on January 18, 2011, he asked Defendant Hass for a grievance form to complain about Defendant Twitchell, and Defendant Hass responded: "Mr. Storms your [*sic*] a drunk and junkie, you are in my jail so shut up and I ain't going to argue with you anymore!" Plaintiff also states Defendant Hass told him he didn't have any "rights." (*See* Dkts. 3, p. 2; 3-1, p. 1; 36, p. 1; 45, p. 1; 46; 60, 60-1.)

Defendant Hass claims he never refused to allow Plaintiff to utilize the grievance system, nor did he receive any grievances from Plaintiff alleging that Plaintiff was denied

the right to file grievances or that Plaintiff's grievances were ignored. (Hass Aff. ¶ 3 (Dkt. 30-2.)) Other officers at JCDF while Plaintiff was an inmate there similarly state that they never refused or ignored any grievances of Plaintiff. (Lynd Aff. ¶ 3; Ibarra Aff. ¶ 3; Kehrer Aff. ¶ 2 (Dkts. 30-3, 30-4, 30-5.) In the record, there are numerous Inmate Request Forms filed by Plaintiff during his stay at JCDF, from January to April 2011.[6] There is also an Inmate Grievance Form filed by Plaintiff on April 2, 2011, in which he complained about the way "Deputy Debbie" treated him during a clothing exchange. (McFall Aff., Ex. 1, pp. 1-14.)

### C.    *Analysis*

It is uncontested that a grievance procedure existed and that Plaintiff did not exhaust the grievance procedure. However, under the PLRA, an inmate is excused from the exhaustion requirement when circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).

Plaintiff has submitted multiple affidavits of his own, all consistently asserting that Defendant Hass would not allow Plaintiff to file a grievance against Nurse Twitchell because Plaintiff was a "drunk and a junkie." Defendant Hass denies that he ever refused to allow Plaintiff to file a grievance. Defendants argue the fact that Plaintiff filed multiple Inmate Request Forms and one Inmate Grievance Form in April of 2011 demonstrates that the grievance process was available to Plaintiff.

---

[6] These Inmate Request Forms most often deal with Plaintiff's commissary balance, hair cut requests and inquiries regarding his court dates. (McFall Aff., Ex. 1, pp. 1-4, 6-14.)

Courts have repeatedly held that an administrative remedy becomes "unavailable" for purposes of the exhaustion requirement if prison officials do not respond to a properly filed grievance or if they otherwise use affirmative misconduct to thwart a prisoner's attempt to exhaust. *See, e.g., Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926 n. 18 (9th Cir. 2005); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). If Plaintiff's version of the facts is true, his ability to file a grievance against Defendant Twitchell was unavailable. The fact that jail officials gave him grievance forms for his other complaints is not dispositive of whether Hass made a judgment call on another occasion that Plaintiff should not be given a grievance form because of a belief that Plaintiff caused his own medical problems by abusing alcohol and drugs. Where jail policies dictate that jailors have complete control over whether to hand out grievance forms, rather than making these forms more readily available to inmates, their burden to show they did not withhold a form from an inmate is somewhat higher than if inmates could obtain the forms without asking for them.

Where there are differing versions of material facts on the exhaustion defense, summary judgment on the issue is not appropriate. The Court finds there is an genuine issue of material fact regarding whether administrative remedies were "effectively unavailable" to Plaintiff because his efforts to file a grievance regarding his medical treatment were "thwarted," thereby excusing the exhaustion requirement. Defendant's motion is denied without prejudice.

**4.     Notice to Plaintiff of Intent to Grant Summary Judgment in Favor of Lieutenant Hass on Medical Deliberate Indifference Claim**

The next step in this litigation is either to hold a hearing on the issue of whether Plaintiff is excused from exhausting his administrative remedies, or to proceed to the merits of Plaintiff's claims. Because Plaintiff's medical records and his course of treatment are already before the Court as a result of Nurse Twitchell's Motion for Summary Judgment, the Court concludes that the most efficient way to resolve Plaintiff's claims against Lieutenant Hass is to proceed to consider the merits of a summary judgment motion. Should Plaintiff's claims survive summary judgment, the Court will set a hearing on the exhaustion issue before permitting Plaintiff to proceed to a jury trial.

Upon submission of a summary judgment motion by any party, Rule 56(f) permits the Court to grant summary judgment for a nonmovant, "[a]fter giving notice and a reasonable time to respond." Fed.R.Civ.P. 56(f)(1). Based on the submissions of Nurse Twitchell, it appears that Plaintiff cannot produce facts supporting his claim of deliberate indifference against Defendant Hass regarding denial of, or interference with, Plaintiff's medical care. Therefore, Plaintiff shall have 30 days after entry of this Order to provide any supporting evidence he has to support his medical claims against Defendant Hass.

Should Plaintiff file a substantive response to this Order, Defendant Hass shall submit a summary judgment motion on the remaining claims within 30 days of Plaintiff's submission: whether Plaintiff's housing in a cell without running water violated the Eighth Amendment, and whether Defendant Hass exhibited deliberate indifference by failing to

do more to stop Plaintiff from harming himself during his alcohol withdrawal. Plaintiff shall then submit his response within 21 days, together with all evidence he has that supports his claims.

Should Plaintiff fail to file a response to this Order, the Court will dismiss with prejudice the remaining claims against Defendant Hass under Rule 41(b), without Hass having to file a motion for summary judgment.

## OTHER PENDING MOTIONS

### 1. Plaintiff's Motion to Amend Complaint

On November 20, 2013, Plaintiff filed a "Motion to Modify Prisoner Complaint Form." In his motion, Plaintiff seeks to add allegations that Nurse Twitchell ignored his safety, was unprofessional by making fun of him, did not follow doctor's orders on medications prescribed, and could have influenced Hass to house him in a safe environment.[7] (Dkt. 48.)

The Court now considers whether to allow Plaintiff an opportunity to amend his Complaint. Amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. That rule states that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has explained the reasoning behind allowing the opportunity to amend:

---

[7] In his motion, Plaintiff states that he knows the person responsible for the medication dosage was Dr. Keller and "not Nurse Angie" and that Plaintiff "will address that individual in the future at a later date." (Dkt. 48, p. 1.)

> In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. This court has noted on several occasions that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires. Thus Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.

*Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (internal citations, quotation marks, and alterations omitted). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," it is appropriate for a court to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court's Initial Review Order set an amended complaint deadline of November 22, 2012. (Dkt. 10, p. 11.) Plaintiff filed his request for amendment one year after that deadline. Discovery closed nine months ago on December 16, 2013, and the dispositive motion deadline was February 16, 2014, nearly seven months ago.

The Court finds that allowing Plaintiff to amend his complaint would cause undue delay to the resolution of this action. If Plaintiff obtained facts to support his newly-proposed claims during discovery, he has not produced them to show that his amendment would not be futile.

The Court already has addressed the allegations regarding the medications prescribed and Defendant Twitchell's treatment of Plaintiff and found she was not

deliberately indifferent. These "additional" allegations do not change the Court's conclusion.

Even though discovery is now closed, Plaintiff has produced no evidence to support his assertion that he was housed in an unsafe environment, or, if he was, that Defendant Twitchell was aware of, or responsible for, such housing. Plaintiff has no facts to show that Nurse Twitchell housed him or permitted him to be housed "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, Plaintiff's allegations that Defendant Twitchell was "childish" and "made fun" of him do not state a claim for relief. Verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983). Plaintiff's motion to amend will be denied.

## 2.  Plaintiff's Request for Appointment of Counsel

Plaintiff has two pending motions for appointment of counsel. (Dkts. 56, 68.) Plaintiff is no longer incarcerated. However, he asserts that he has no means to pay for counsel and that his knowledge of the language and terms used by Defendants is

"unclear." The Court previously denied Plaintiff's request for counsel in its Initial Review Order. (Dkt. 10, p. 6.)

Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1330-31 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

The Court finds that none of the factual information contained in Plaintiff's new requests demonstrates that the earlier decision denying appointment of counsel should be reconsidered. There is no doubt that it is difficult for pro se individuals to litigate, even after a release from custody, and that Plaintiff does not have the legal training or resources to do what he could if he was a lawyer or had a lawyer. However, lack of financial resources and lack of legal expertise are not enough to warrant appointment of counsel. Plaintiff has had adequate opportunity to attempt to find counsel on a contingency basis.

In addition, after a review of the entire record, the Court concludes that Plaintiff's claims against Defendant Twitchell are not meritorious, and it is doubtful whether his claims against Defendant Hass are meritorious, given that discovery is now closed and he has not produced any evidence showing that he was housed in unsafe conditions. Therefore, counsel will not be appointed.

Plaintiff's task in responding to this Order and to any motion for summary judgment filed by Defendant Hass is to bring forward all of his evidence that he would

produce at trial to support the elements of his claims. Plaintiff is not expected to make elaborate legal arguments, but to focus on showing where there are genuine disputes as to any material facts.

### 3.  Defendants' Motions to Seal

Defendants seek to file their motions and all supporting affidavits and exhibits under seal to protect Plaintiff's privacy rights in his medical records and jail records containing medical information. The Ninth Circuit has held that there is a strong presumption of public access to judicial records. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to file documents under seal bears the burden of overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*, 447 F.3d at 1178).

Parties "who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Kamakana*, 447 F.3d at 1180. Those compelling reasons must outweigh the competing interests of the public in having access to the judicial records and understanding the judicial process. *Id.* at 1178–79; *see also Pintos*, 605 F.3d at 679 & n. 6 (court must weigh "relevant factors," including the public's interest in understanding the judicial process).

In *Bailey v. Wexford Medical Service*, 2014 WL 4541266 (D.Md. Sept. 10, 2014) (unpublished), the United States District Court for the District of Maryland issued a well-

reasoned decision in a case much like this one. That Court recognized that, even though a privacy interest in the plaintiff's medical records was at stake, the "public's right of access to dispositive motions and the exhibits filed within is protected to an even higher standard by the First Amendment." *Id*. at *5 (citing *Rushford v. New Yorker Magazine, Inc*., 846 F.2d 249, 253 (4th Cir. 1988)). The court further recognized that the public's right to access "extends to a judicial opinion ruling on a summary judgment motion," and that the First Amendment right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id*. (citing *Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014)).

In the *Bailey* case, Defendant Wexford argued that, even though Bailey had placed his medical information at issue in the case, Wexford's motion and its attached exhibits, which included a doctor's affidavit and hundreds of pages of Bailey's medical records, should be shielded from public view. Wexford also argued that the motion and its exhibits "could not be redacted without eviscerating the purpose of the [m]otion" and without harming Wexford's ability to present an adequate defense to Bailey's medical claims. *Id*. at *6.

The Maryland court reasoned and concluded:

The court agrees that Bailey has placed his medical information at issue by asserting in his complaint that he repeatedly cut his own wrist and then fabricated a story of sexual assault so that he would be taken to a hospital to receive proper medical treatment. The court must therefore look to, and rely on, the medical records surrounding his treatment. But given the quantity of personal medical information in the medical records that is unrelated to the issues in this case, and the fact that this information is scattered throughout

the records, Bailey's interest in sealing the full medical records is compelling. In contrast, the factual information referenced in Wexford's memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment, is inextricably tied to the issues in this case, as is the factual information in Dr. Ottey's affidavit. In order to narrowly tailor the denial of access to serve Bailey's compelling interest in not making public a large amount of medical information unrelated to his claims, the court grants Wexford's motion to seal as to the medical records, but denies the motion as to both Wexford's memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment,  and Dr. Ottey's affidavit.

*Id.*

In this case, the public has a strong interest in knowing what occurs at the county jails, which are funded entirely by taxpayer dollars. Whether conditions at the county jails violate the Eighth Amendment of the United States Constitution is important information for the general public to know, so that our country can continue to maintain humane incarceration facilities. The Court also recognizes that Plaintiff has an interest in keeping his medical records private, and that he should not have to sacrifice all of his privacy rights to bring a civil rights suit alleging unconstitutional government conduct. Therefore, the Court will, in large part, follow the direction of the Maryland district court, and balance the interests of Plaintiff and the public. The Motions to Seal will be granted in part, and denied in part. The medical and jail records will remain under seal, as will the affidavits, but the motion, memorandum, and statement of fact will be unsealed.

# ORDER

**IT IS ORDERED:**

1)       Defendant Hass's Motion to Dismiss for Failure to Exhaust (Dkt. 30) is

        DENIED without prejudice.

2)       Defendant Hass's Motion File Documents Under Seal (Dkt. 37) is

        GRANTED as to the Affidavit and Exhibits filed at Docket No. 31.

3)       Plaintiff's Motion to Modify Prisoner Complaint Form (Dkt. 48) is

        DENIED.

4)       Defendant Twitchell's Motion for Summary Judgment (Dkt. 55) is

        GRANTED. All claims against her are DISMISSED with prejudice.

5)       Defendant Twitchell's Motion to File Documents Under Seal (Dkt. 58) is

        GRANTED in part and DENIED in part. The Clerk of Court shall unseal the

        Motion, Memorandum, and Statement of Undisputed Facts (Dkt. 55, 55-1,

        and 55-2). The Affidavits and exhibits shall remained sealed (Dkt. 55-3 and

        55-4).

6)       Plaintiff's Motions to Appoint Counsel (Dkts. 56, 68) are DENIED.

7)       Plaintiff shall have 30 days after entry of this Order to provide any

        supporting evidence he has to support his medical claims against Defendant

        Hass to show cause why summary judgment in favor of Defendant Hass

        should not be granted as to the medical deliberate indifference claims.

8)       Should Plaintiff file a substantive response to this Order, Defendant Hass

shall submit a summary judgment motion on the remaining claims within 30 days after Plaintiff files his submission: whether Plaintiff's housing in a cell without running water violated the Eighth Amendment, and whether Defendant Hass exhibited deliberate indifference by failing to do more to stop Plaintiff from harming himself during alcohol withdrawal. Plaintiff shall then submit his response within 21 days, together with all evidence he has that supports his claims.

9) Should Plaintiff fail to file a response to this Order, the Court will dismiss with prejudice the remaining claims against Defendant Hass under Rule 41(b), without Hass having to file a motion for summary judgment.



DATED: September 29, 2014

_____

Honorable Candy W. Dale
United States Magistrate Judge